Jesse W. McLennan appearing for the appellant, Christine W. Lovato, Chapter 7 trustee, Jimmy Dahoo, appearing for appellants, East West Bank, East West Bancorp, and ADHI Solar LLC. Good morning, your honors. Good morning, and I understand you're going to split your time. Is that correct? Yes, your honors. We were wanting to reserve five minutes for rebuttal, and the intention is for me to take issues one, two, three, and six in the opening brief, take approximately six or seven minutes with my co-counsel, Mr. McLellan, taking issues four and five. Okay, you're going to, Mr. McLellan, you better keep an eye on your clock, because I, the only clock I have is the one on the wall, so I'm not going to be able to monitor your time at all. And we have a clock going on right here. Okay, good. All right. Please begin. Good morning, your honors. May it please the court. Jimmy Dahoo on behalf of appellants, East West and ADHI. As you know, we're here today on a issue involving bankruptcy finality. The CDTFA seeks to minimize the rulings of Ritson, Mayer, and Fantasia, arguing that they're simply state-released cases and have no application to the current case. However, those cases stand for one overriding principle. When the bankruptcy court decides the jurisdiction that will liquidate a claim, that is a resolution of a discrete dispute, and that's a final order. So there was a liquidation of the claim? There was not a liquidation of the claim. The court abstained. So your first statement is incorrect then, isn't it? When you said that when the court liquidates a claim, then it becomes a final order. There's no liquidated claim in this case. And I apologize if I misspoke, your honor. I said when the bankruptcy court decides the jurisdiction that will liquidate a claim. So here the bankruptcy court decided that it will not liquidate the claim. It abstained in favor of a different jurisdiction. So I apologize if I was not clear. But even if some other court was going to liquidate the claim, to have a final order, don't we have to have the bankruptcy court setting forth what that amount is? I mean, in looking at the first order, Judge Brekker said, I want the parties to provide their calculation of the amount of CD TFA's claims entitled to priority under Section 507A8 based on the figures set forth in CDTA's amended proof of claim 124-2. I mean, the first order doesn't decide everything. It's not final, is it? And I would argue, your honor, yes, it is final. The trustee never asked for an estimation. The trustee asked for a liquidation. Judge Brekker abstained from liquidating the claim under Section 505. And this court, CM Reid Almeida, has determined a Section 505 abstention is a final order. There are subsequent cases that find that. Well, is it a final order as to abstention and figuring them out? But what Judge Brekker had to do in his orders, he hadn't decided all the things that he had to decide. Well, the only two issues presented to Judge Brekker were liquidation and priority. Again, the trustee didn't ask for estimation. And we do have subsequent cases. If you look at the Supreme Court's case law on how they developed the term discrete dispute, and admittedly, this is a case that was not cited in the briefs, but was relied on by the Supreme Court cases that both parties cited in their briefs, and I made Mr. Dreher aware of my intention to raise it with the court so that he has the ability to address it as well. So, if you look at Howard in footnote three, they cite to a case from Circuit Judge, at 711 F. 2nd, 441 First Circuit, and in SACO, the First Circuit there held that an order determining priority, but not yet liquidating the amount of that priority, was nevertheless a final order. Unanimous Supreme Court decisions in both Bullard and Ritzen on which Judge Breyer sat also utilized and relied on that discrete dispute standard first developed by then Circuit Judge Breyer in SACO. So, we believe that the Supreme Court had this very type of issue in mind when it formulated the discrete dispute standard, and as alluded to in Pearl, the polluted nature of Ninth Circuit law has been refined by this case law, and Pearl, in fact, found that a civil contempt order where the sanctions were not liquidated was nevertheless final, and the majority rejected their dissenting colleague's argument to the contrary that you need to have liquidation. In fact, you know, to determine whether it was final, I mean, it's important for me to look at what the judge did. I mean, the judge, Judge Spraker, was in the best situation, the best position to determine whether or not what he was making was a final order, and he said the parties will be provided the opportunity to prevent the court with further briefing. I mean, I just don't see where, in the record, Judge Spraker indicated that it was going to be a final order. Well, he indicated in subsequent rulings he intended his priority determination to be final, and the trustee admittedly filed the motion for the purpose of commencing with the distribution, but the trustee in that particular motion did not request a distribution. A subsequent distribution would have been a separate matter altogether, and putting a number in there for estimation purposes, Judge Spraker could not liquidate the claim on a final basis, as he noted, because he previously abstained from liquidating that claim. And the issue of the liquidation of the claim is still on appeal, and you're still fighting about that issue with California Tax Authority. My understanding is, and Mr. McClellan can speak to that more, my understanding is it's still before the OTA, and regardless of who wins, each party has the opportunity to further appeal that matter. It could take years, so when we get to the efficiency and finality concerns raised by all of the Supreme Court, Fantasia, all of the courts subsequent to that, efficiency and finality is not served by having a multi-year process in California to insert a number. We already know that the number that was going to be put in Judge Spraker's priority order for an estimation was simply going to be taken from the CDTFA's proof of claim. There was no additional argument that was required. So taking Judge Spraker's decision to its logical conclusion, we have a multi-year appeals process in California. That number gets ministerially inserted into the priority order. The priority order is then technically final. Then we appeal, and what are we appealing at that point? I would argue we're also appealing the 505 abstention, which has the potential to redo the matter all over again, which Fantasia said makes no sense. So the order kind of goes hand-in-hand, the priority and the abstention. Assuming we are not allowed to appeal the 505 and the appellate court finds that issue to be moot, then we've basically lost our appellate rights on 505, and the only issue on appeal is the priority determination that Judge Spraker has already made. So on those bases, we- I don't want to force you to step out of your lane because it may be your co-counsel wants to raise this, not you, but- Yes, Your Honor. If we don't agree with you on the finality issue, is it your co-counsel is going to be arguing that Judge Spraker, in his second order, was just wrong? Is that- He's going to be arguing as to the tax issue, Schenck and Ilko and Raymond. I'm focusing more on the finality, Your Honor. So I won't push you out of your lane. Oh, no, Your Honor. And that was my whole point on the finality order, and we submit the bankruptcy court's second determination order was an error because the first termination order was final, was not interlocutory, and we also submit that because the order was final, issues two and six also require reversal. Judge Spraker's denial of our motion to reconsider was also an error, and I see my time is kind of coming to an end, but I did want to address the party presentation principle briefly. So we agree with the CDTFA that- and the bankruptcy court certainly has the right and the obligation to apply the correct law, but that's not what occurred here. The CDTFA filed a completely new motion. It wasn't a motion to reconsider. They didn't raise Rule 54, 59, or 60. We addressed the applicable standard in our opposition to that motion, saying it's a Rule 60 motion for reconsideration. The CDTFA completely ignored that, did not address that in their reply, and then one day before a hearing on that motion, Judge Spraker pretty much ordered the CDTFA to essentially brief the motion to reconsider that it had refused to brief at that point in time, and we respectfully submit that the bankruptcy court injected itself as a party in that case and then subsequently entered a Rule 55 ruling when the motion to reconsider had ordered the CDTFA to brief had no merit, and so on that basis, we respectfully request that the court reverse based on the party presentation rule, and I'll pass it off to my co-counsel, Mr. McClellan. Thank you, Your Honors. Good morning. May it please the court, Jesse McClellan for appellants. I will only address the priority issue. The bankruptcy court erred when it concluded that California sales tax qualifies as a tax on or measured by income or gross receipts under Section 507-88A. Congressional intent and shank requires that California's transactional sales tax be categorized under Subdivision E, which is specifically designed for those taxes. California sales tax is a limited transactional excise tax. It's imposed on each retail sale of tangible personal property. It's at the opposite end of the spectrum of income and true gross receipts taxes, which are based on periods of revenue and very broad in scope. Ultimately, the bankruptcy court's priority determination should therefore be reversed on that basis independently. We begin our analysis here with Congress's treatment of these taxes, and ultimately Congress created these separate categories for a reason. In the record, it demonstrates that Congress, with respect to Subdivision A, the income and gross receipts tax provision, initially proposed one version of it where gross receipts and income tax were included in that as Subpart 1, and then the excise transactional taxes were included in that as Subpart 2. Later versions of the law ultimately resulted in the excise taxes coming out and being placed into Subdivision E. Now, shank reviewed this legislative history in detail. It made a very clear conclusion that as it pertains to excise taxes, the congressional intent demonstrates that they qualify for one of two categories, and that's C, which is the trust fund provision, or E, which is the excise provision. The fight in that case really focused on that tension between those two categories. Of course, the dissent maintained that all excise taxes would come into Subdivision E. The reason why he maintained that is because the congressional record says that all excise taxes should go into Subdivision E. There was some confusion as it pertains to the Senate reports, and the House reports, and the different proposals, but ultimately, it's the joint committee, the joint statement of the compromise that resulted in the law that we have before us today. Really, if you look at the dissent in shank, we think it makes a very compelling argument. Now, ultimately, that leads us to Raymond, and the time is very limited here today, but I just want to briefly say that Raymond, the conclusion it reached, we believe respectfully is wrong because it misidentifies California's tax as being a tax on total receipts. If that were true, if that were the case, then frankly, the result in Raymond would make more sense, but the reality is that that's not correct, and the California sales tax is a limited excise tax. It's a transactional excise tax limited to retail sales of tangible personal property, and ultimately, under Part B, our position is that shank remains the superior law, that shank did a detailed analysis of the congressional history, of the legislative history, and reached a very well-supported articulated decision, and that Raymond didn't mention that whatsoever. And with that, your honors, I would like to reserve time on rebuttal, so I will leave it at that for now. All right. Thank you.  Good morning, your honors, Jamie Dreher for the California Department of Tax and Fee Administration. It seems at least the parties are in somewhat of agreement that obviously the main issues here are finality of the order, the first order, I'll call it, that's in the record, and then secondly, the tax analysis that Mr. McClellan was just addressing. I think I decided I'll go in reverse order on this one. Circuit authority is clear. The exact question at issue, whether California sales tax qualifies as a gross receipts tax as contemplated by Section 507A.8.A has been decided. Under the court's own authority, I think under windmill properties and related cases, those BAP holdings that address this specific issue, additionally, the Ninth Circuit memorandum that adopted the underlying BAP ruling in ILCO are all binding on this panel, and I believe that is essentially the end of the question on the tax issue. Just to address a couple of points, however, the council made on this legislative history, and the main thrust of their argument appears to be Schenck says otherwise, and Schenck is a Ninth Circuit case and is binding. The Schenck case did not address, and as far as we can tell, none of the parties in the Schenck case addressed whether or not, even in that case, it was Washington sales tax, so it is different. And by the way, there are differences between state sales taxes, from what I can tell, related to how they're collected and paid over. Schenck did not address whether or not Washington sales tax is a tax on gross receipts, simply was not an issue in the case. There's no statement, there's no discussion, either in the dissent or anywhere in the Schenck case on that issue. The sole issue in Schenck, which again was Washington sales tax, was whether or not the Washington state sales tax could qualify both as an excise tax under Section 507A.E. using the current numbers. It gets a little confusing, because in some of the older cases, the statutes are differently labeled. The sole issue was whether, in addition to occupying that space, it could also occupy the space of Section 507A.H.C. and qualify as a trust fund tax as contemplated, you know, that's shorthand under that subsection. That was the only issue. Nobody talked about gross receipts. So frankly, it's simply inapplicable. We've cited as supportive of our position for the notion that the subsections of 507A.E. are not mutually exclusive. There's cases in our brief. There's half a dozen or more of them that stand for the proposition. Well, I shouldn't say they stand for the proposition, but their holdings are that different types of taxes can occupy different subsections of Subsection 507A.H.C. And frankly, you know, I'm going to leave my comments about the the tax issue at that point. I think Judge Brekker fully analyzed that, obviously spent a lot of time on this. The record is full in that regard. But actually, I just think that the specific holding it issue is binding on this panel, on the tax issue with regard to Raymond and then the Elko cases. Turning to the finality issue, going back in time a little bit, and I've got in front of me the court's order on the trustee's initial 505 motion, you know, we call it. As you refer to it as the first order. I refer to it as the first order. Okay, that's fine, we understand. And Judge, in listening to, and that's at ER, starts at ER 590, 597, I should say. So I'm just looking at the form of the order and also thinking back to what we thought we were seeing and what happened in this case. We reviewed the order. It provided for further briefing. It specifically says it's not binding on allowance or disallowance of the claim. It provides for further disputes, further refinement of issues. Judge Brekker has now issued a ruling saying that that was an interlocutory order. That's what we thought at the time it was issued. And that left us in a little bit of a strange position of deciding what to do about that. Ultimately, we came up with this idea prior to the trustee's motion for interim distribution of getting it in front of the court. This is just the way we did it on this motion to determine priority tax status. Something like that. It's a different argument than you made the first time. In the first motion, you were not raising the right to the... Assessment, not assessable. That's right, Your Honor. And the trustee didn't, and then we didn't. We didn't pick up on it and add it to the argument in response to the trustee's brief, actually. And so, if you look back at the record and you read the transcript, the whole discussion really is gross receipts or excise kind of focused. I'll just call it that. With respect to the subsections of assessed but not assessable, or the year prior the subsection to 507-888, it just wasn't discussed. So, yes, we did see his ruling where he says, the judge breaker said that 888 was the applicable subsection. And that, in connection with this order, just left us a little bit of a conundrum what to do. I would also say, I think the key issue to finality is not just that this order left a lot of things to be done. I think the analysis on finality is how you characterize what the order is, right? So, and in bankruptcy cases, I think probably we can all agree sometimes it gets a little confusing. So, it's really about the, to determine whether or not an order is final, I think, just summary, it's how you characterize it. And I would characterize this order as providing guidance on limited issues in order to allow the trustee to propose an interim distribution. And that's really what the stated purpose of the motion was for. So, that's all it is. It's not a claims allowance motion. It doesn't fix the amount of the claim. We thought maybe we would respond to the trustee's interim distribution motion, again, going back into the case with a discussion or further argument on our priority calculations, which under the first order, there wasn't really a mechanism to do that, or we weren't sure how to do that. Because we filed the subsequent, you know, pleadings with these calculations and argument, and then it sat. So, we decided to try to move the ball forward. We filed that motion. Is it important that we filed that before the trustee's motion for interim distribution? I'm not sure, but we did. We're trying to move the ball forward. And I would just also say, kind of, maybe in conclusion of prepared remarks, that where we are today is okay. Like, it's good for this case. Like, the right thing has happened. There's, you know, a full, basically agreed. I'm not, I won't say agreed, like the trustee and CDTFA have agreed that the amount reserved is the actual amount of the priority claim, right? Because that's also still subject to the OTA proceedings, which I believe the OTA hearing was, I want to say May. Mr. McClellan may check me on that, but it was recently. I watched it. It was interesting. And also, as I understand the rules, the OTA is to issue a ruling within 100 days of that hearing that was held in the last 30 to 60 days. So, that's coming. I do acknowledge all these issues, including whatever the court does today. Considering the amount at issue in this case and the amount of the sales tax, including whatever happens at the OTA, it's quite possible that those go to further proceedings. But wrapping up my point, like the status quo is okay right now. The full amount of the asserted priority claim is reserved. There wasn't really, and I'm not saying they agree to it, but there was no real big fighter dispute with the trustee in the context of picking the amount of reserve. We worked cooperatively. So, the amount's reserved. I think the trustee would urge, or like some appellate review or overturning of circuit precedent on the fact that sales tax in California constitutes a gross receipts tax under 507-88A. But in the meantime, the liquidation of the amount of the claim is proceeding. And for all those reasons, and happy to answer any questions, we urge the court affirm Judge Spraker's most recent ruling. Thank you. Any questions? I just wanted to, so you want us to affirm that he determined this wasn't a final order, and then that that's okay. And that's really what you want us to do. We're never going to get to the issue of whether he was right about the calculation of the excise tax or versus. Agreed. No. We're not. We're just going to decide. All we're going to decide is, did he have the authority to grant the relief that you wanted, which was to go back in and revisit the question of the, did it reach back to only the 507-88I, double I, or does triple I suddenly come into play? And does that change the analysis for him? And he said it did, and that's what he ruled. And that's what you're asking us to affirm. It is, Your Honor. And just, yes, is the direct answer to your question.  I would also just add in the context of Judge Spraker's earlier decisions, and then how under Rule 54, he revisited it to acknowledge that under his ruling, the California sales tax is a gross receipts tax. The A, little I, two little I's and three little I's, it's either one or it's all or none. It can't be, you know, it can't be just the one little I. It has to be all of them. And then what the tax amount ends up being and for what tax periods, we're not there yet. They're taking issue with, in part, that Judge Spraker characterized what you did somehow as not really a motion for reconsideration and encourage you to do that and then therefore inserted himself in the proceeding by doing that. Why is that not a valid point? Two reasons, Your Honor, and, you know, they reference it and brief it as the so-called party presentation rule. I would just say it's like not even close. I mean, the cases they cite for the proposition that courts should not inject themselves into proceedings. I can't remember the name of the case I've ever written here, but the main case they talk about is where a court actually, on its own, decided that a statute that it was a that the at issue that led to the criminal prosecution was potentially unconstitutional and pleased and just decided that that was going to be an issue in the case without challenge and invited amicus briefs on that issue. And the distinguishing feature here is you raise the other question. And so you injected the issue before the court. We injected the issue and the claim is what they call it. The court is always entitled to, I believe, select the correct legal standard and revisit its own order if it decides that it wants to. Yes. How it characterized what you filed was something that it decided was it worked for it better.  Okay. Agreed. Yep. Yes. That's what I wanted to. All right. Thank you. Thank you. Thought he was going to come back. Hello again, your honors. So my esteemed colleague says they didn't know what to do. But if you look at the briefing, they pretty much attacked the trustee's motion, which was crystal clear that they wanted a priority ruling three years prior to the petition date, arguing that there were discussions before with Mr. McClellan and the CDTFA where the CDTFA made it clear to trustees council that three years wasn't going to cut it. Why they didn't raise it in their briefs, I don't know. And if you look at their motion for abstention that they filed at ECF 3996, and I apologize, I don't know where in the excerpts they are. On page 13 of that, lines 22 and 23, they say the issue of the priority of debtors California state sales tax obligations under 11 USC 507 was the subject of extensive prior briefing from both CDTFA and the trustee. What they essentially argue now is that the 505 order, the first determination order, was in their words, guidance. So in other words, they're saying that it was basically an advisory opinion, which of course, courts are not allowed to provide. Further to the point that they didn't know what to do, Judge Spraker put in that first determination order. If the parties had argued the other provisions we're arguing about now, he may have thought differently, but he decided it based on the manner that the parties presented the case. So in that vein, he was consistent with the party presentation principle on the first determination order. He veered from that with his second determination order. But they raised the issue, and then he said, well, what you're asking me to do is reconsider my prior ruling. They raised it as a brand new motion, Your Honor. They didn't raise it as a reconsideration motion. They said that we want clarification for your order. We believe this is an extension of your order. These two were the only provisions at issue in the prior ruling. Now we found another provision that is assessed and accessible. We didn't raise that before. We will now want you to consider it. And he said, well, then this is really reconsideration if I'm going to go down this path. Because what I did was decide the other two questions that you presented. But he raised that issue, Your Honor, after if you look at it, there was a raise the issue. He then adopted it as a question that he should address because they raised it. They raised the issue that we want to clarify your order that subsection three should be the applicable provision, which they could have argued before. We raised in our opposition, this is really a reconsideration motion. We're the ones that raised it. It was the opportunity for the CDCFA at that point in their reply to address that. They did not address it. They, in fact, kind of kicked the can down the road and said, we raised procedural issues to kind of derail the court. And then the court pretty much ordered them to brief the Rule 60 issue. Basically, advised them as a client would advise their attorney what to do. And on that basis, we think the court impermissibly injected itself into the process. And I believe my time is up. Your time is up. I do want to ask your colleague a question, though.  Thank you. Thank you, Your Honors. Mr. McClellan, why aren't we bound to follow ILCO? I thought that question may be coming. Um, and it's a good one. Ultimately, I think where I would start is by looking at Schenck and then looking at the Hart case. And Hart is quite clear as it pertains to Ninth Circuit rulings that are issued on the merits. So in Schenck, we have a Ninth Circuit opinion issued on the merits that is very broad in that it addresses the legislative history with respect to 507-88. It's not based on Washington law. It's the first and only, even to this day, opinion that was written by the Ninth Circuit. So with that in place, the question then becomes, well, why didn't Raymond mention Schenck? According to Hart, it should have and that it didn't follow the stare decisis rules by not mentioning Schenck. Well, then comes ILCO. And ILCO, by its own statement, felt that it was compelled and didn't indeed follow Raymond. This court issued that opinion in an unpublished form explicitly stating that it would not serve as precedent. In that case, the debtor appealed and the Ninth Circuit issued merely a summary affirmance, which in Illinois State Board of Elections, the U.S. Supreme Court explicitly stated that summary affirmances are of a meaningful lower value than an opinion that's written on the merits. So ultimately, we believe that Schenck is the superior authority. We think it addressed the issue very broadly. The reason why it didn't get to subdivision A is because the legislative history makes it clear that the reason why we have these different subdivisions is because Congress wanted to different taxes and apply different statutory periods to them. It was the sole purpose, or at least the primary purpose, for amending the law in the first place. Whereas if you're going to take what Congress took out of subdivision A, which you can't argue that it was taken out of subdivision A because the legislative record is very clear, I don't believe Congress would then want states to put it right back in there under what amounts to be a form over substance approach that says, hey, look, our law uses the word gross receipts in defining how the measure is actually computed, and therefore it must fit into this category that is for income or gross receipts. So ultimately, I respect that there's a challenge that this court has as it pertains to a ruling that it has made and the way that it treats its precedent. It's not our precedent. It's the Ninth Circuit's precedent. The Ninth Circuit affirmed the BAP. Yes, ma'am. Yes, ma'am. And fair point. But ultimately, it's the Ninth Circuit's precedent and a opinion on the merits and shank. And ultimately, that's what I think the answer is to your question. Okay. And they'll give you the answer when you get there. Yeah. Thank you, Your Honor. Thank you. Appreciate it. All right. Thank you for your argument. Thank you. Both of you. Thank you very much. This matter is submitted and that is the end of our calendar. So we are adjourned. Thank you all. Thank you. All rise.
judges: Brand, Gan, and Corbit